I understand we are being reviewed and graded by the William & Mary Law School. It's a little intimidating. We'll proceed with the first case, N. P. v. Maxwell, Mr. Nussbaum. I just said that so you'd be aware. Mind your P's and Q's during your argument. I know. If the Court thinks it's being intimidated by the presence of all these law students, I don't know what I'm going to do. May it please the Court, good morning, Your Honors. I'm Andy Nussbaum. I represent the Board of Education of Prince George's County and its Superintendent, Dr. Kevin Maxwell. Under the IDEA, a court reviewing a decision from an administrative proceeding is to give due weight to those proceedings, is to consider the findings of fact made in the proceedings as being prima facie correct, is to give deference to the administrative law judge's determinations as to credibility of witnesses, is to afford great deference to the judgment of education professionals, and is not to substitute its own notions of sound educational policy for those of local school authorities. If the district court below, in this case, Your Honors, did none of the things a reviewing court is supposed to do and did the one thing it's not supposed to do, it substituted its own notions of sound educational policy for those of local school authorities. Although the Court, in its slightly more than three-page memorandum opinion, attempted to explain why it rejected a well-thought-out and detailed 56-page administrative decision, none of the six factors that were identified by the Court, either individually or collectively, was sufficient to warrant the reversal of the administrative law judge's decision here. I'd like to first address the issue of the Supreme Court. Your observations are probably well taken. The one concern I have, and you can address, is since the ALJ issued its opinion and the district court issued its opinion, the Supreme Court, I think it made it pretty clear, its standard may not be that clear, but it made it pretty clear that it did not like the standard which set the bar at more than trivial or more than de minimis. And it also seems to me that that is the standard the ALJ applied several times in its opinion, her opinion, and the, sort of implicitly, the district court. And I gather your position is, we can do that analysis under the separate standard, but is that the role of an appellate court to get and look, as you point out, it's 56 pages. The ALJ carefully laid out all the facts and how they related to each other and there was balance, but there still needs to be an evaluation of those facts and the combination of facts to determine whether the FAPE or the, was reasonably calculated, not the FAPE, the public education provided to NP was reasonably calculated to make progress toward the applicable educational goals. And even that question is, what is the applicable educational goal in this case, could be something for the ALJ to look at. So, I must say, it sounds to me, based on what the Supreme Court says, that we should give the ALJ another chance. You don't, you want us to take care of it ourselves here, but I appreciate hearing your comments on that. Yes, Your Honor, thank you. Of course, you're talking about the NDRF case that was decided by the Supreme Court after the rulings in this, in these cases, both administratively and in the district court. And, of course, both parties filed supplemental briefs, which you have on that. I would also add that this court, I know, Judge Niemeyer, you're familiar with it, this court rendered a decision after our supplemental briefs were filed on August the 14th, 2017, in the case called ML versus Smith, which I believe was this court's first look at NDRF, at the NDRF standard after the Supreme Court decision. And just for your information, because it's not in the briefs, it's 867 F3, 487. One thing that is clear, though, is not only did the ALJ issue its opinion before Andrew, the district court judge did, too. So nobody really applied the standard from Andrew in this case, although, arguably, you could say you could, we could make that determination here. Well, I think that, I think, Your Honors, both, and I answer, reply to both. I think that even though the, there's two things that I would respond to that. Number one is that I think, and I'll get to this in one second, that the ALJ did, in fact, even though her decision was before the NDRF case was decided, I think that, in essence, she actually applied the standard that was ultimately approved by the Supreme Court and NDRF. I'll go through that in one second. The other thing is that I think that the, that this court does have the authority. Judge Niemeyer's inquiry, as I understood it, from Judge Niemeyer's perspective, the Well, so what happened is that the ALJ did not apply the merely more than de minimis standard. That was the standard that was rejected by the Supreme Court and NDRF. And I would suggest, Your Honors, to the contrary, the ALJ specifically concluded that the parents who had the burden of proof in this case, and I'm quoting here, did not prove that the student only made trivial progress during his tenure in the public school. Somewhat foreshadowing, I would suggest the NDRF Just to get the, and further, Judge Wynn's question on page 28 of the ALJ's opinion, the ALJ said it does require the state to provide personalized instruction with sufficient support services to permit the disabled child to benefit educationally. In turn, educational benefit has been construed to mean more than trivial or de minimis educational progress, and cites the cases, and then goes on to explain. And then the court later does the same thing. I conclude that the parents did not prove that the student only made trivial progress during the tenure. Right. Now, it seems to me, if that's all the ALJ concluded, it may not be a big step, or it may be, depending on what the nature of the progress expected, and the standard, which the Chief Justice said was too low a bar. Well, so I would point to a different section of the ALJ's decision, and I would point to pages 28 and 29, which is 93 and 94 of the Joint Appendix. And I think it's significant that the ALJ in those pages cited to two Third Circuit cases, which had not been previously adopted by this circuit, but which set the standard higher than the merely more than de minimis standard. How do you make, when the court, when the ALJ reaches her ultimate conclusion, she says, I conclude, and she applies the trivial test. Well, it's And then she recites it again a third time near the end of the opinion. And I think it's no doubt that that's what she had in mind. Well, again, I don't mean to disagree, but she says that the, she cites the two Third Circuit cases, and for the proposition, and I'm quoting here, that the benefit conferred by an IEP in placement must be meaningful and not merely trivial or de minimis. So the ALJ understood that the She understood meaningful to be more than trivial or de minimis. I don't, I mean, again, I'm not, I'm not arguing, but That's what our case law says. Well, that's true. I understand that. But the fact that she adopted, in essence, the two Third Circuit cases, which had not been adopted by this circuit, but which did stand for that higher standard. In other words, those two Third Circuit cases, in essence, rejected the Tenth Circuit standard before the Supreme Court rejected the Tenth Circuit standard. Why don't you just argue that the Andrew case came down, and it's confusing as to which of the standards, whether the correct standard was applied, whether the previous one, and certainly by the District Court, too, because it was before the Andrew case, and why wouldn't you just argue, we ought to remand this case for reconsideration in light of the Andrew case? Well, I just, because I just don't think it's necessary, Your Honor, quite honestly. But would you win? I would, I would suspect that I would, but, and I mean, why would you be in an argumentative state as to what this language is, trying to argue this ALJ actually applied a standard that most cases in the Fourth Circuit said you don't apply? In other words, you're saying the ALJ did not follow the law here, but followed the Third Circuit, which it cannot do. I'm trying to understand, why would you do that? Well, in part, why I'm trying to do that is because this case has been pending for so long we're trying to reach a conclusion, Your Honor. Don't get there that way. Well, if this, if obviously, if the choices are to affirm what the district court decided in this case or to remand it to the administrative law judge for further determination. What other choices do we have? I would prefer that. Well, the other choice is to reverse the district court judge and affirm the ALJ's decision based on your independent review of the record below, which I understand is substantial, but I think that a review of that record would make it quite clear that the, that what was presented before the ALJ does want us to review the record. But that's, you have the, you have the right to do that under the case law. I mean, we do it every now and then, but it has to be pretty obvious for us to do it. We don't like combing through the records when they come up here. I understand that. We let the trial judges and we let the ALJs do their job and they're more adept at doing  They've actually taken all the evidence. I understand. They've done everything in it. And then we get it. All we have is a whole record up here. That just doesn't feel good to us doing that. I'm at the stage of these arguments where I have five minutes left and I'm not sure whether there's anything left to argue if the court believes that the case should be remanded to the administrative law judge. No, no, no. What you believe. Oh, well. What we believe, you don't. So what I believe is, is what I had said, that I think that the administrative law judge's decision, again, we're trying to, we're here to try to bring closure to the case. And I think that the administrative law judge's decision, based on the language that she used in her decision, makes it clear that she was applying a standard that would have, that meets the NDRF standard as far as being a meaningful and not merely more than trivial. Let me go back to my, the only place where she applies the standard that I could see, she says, I conclude that the parents did not prove that it was, and applied the trivial test. But let's assume, just for the purposes of this discussion, that the, we conclude that the court did apply the existing Fourth Circuit standard, which was overruled in Andrew. What course do you think is appropriate then? In that instance, then I think that a remand to the administrative law judge would be appropriate to have her take a look at it. And if this court does not believe that she applied the correct standard, then I think it should go back to the administrative law judge. In large part because I really do not believe that the district court applied the correct standard either. I mean, for one thing, for example, in NDRF, the Supreme Court did, although it modified the standard to be used in applying the FAPE standard, there were many aspects of the IDEA that the Supreme Court in NDRF did confirm and kept into place. One of which was that the standard is reasonable, not ideal. And another one is that the standard is to be looked at, that the program and placement should be looked at prospectively. The court talks about reasonably calculated as an indication that should be a prospective look at the standard. That is what the school system was looking at when they developed the IEP and the placement. What the district judge did in this case was to ignore that prospective review and stated on that JA57, I am not sure what page of his, I think it was the next to last page of his decision. The court says, one thing is clear, the student has done well at the private school while he has had substantial troubles at the public school. Now the factual, I dispute both aspects of that in terms of the facts. But in terms of the law, it is quite clear that the district judge did not review this as a prospective look forward at the IEP program and placement, but rather retrospectively said, oh, well, he did better at the private school than he did at the public school, so I guess that means the public school was inappropriate. That is not what NDREF stood for either. So I think if the case is going to be remanded, it should be remanded back to the administrative law judge for her to clarify her opinion. There is a question, a procedural question, the sixth point, which seems to be the most in the area outlined in his IEP. The factual findings made by the ALJ was that NP did make progress, and the district court doesn't point out why, what factual errors were made by the ALJ. That's correct. I'm sorry, I'm interrupted. The question arises, if we just remand it, will the court be likely to make the same statement without explaining why he reaches that conclusion? Because it seems to me we may be up here on the same thing again, because the ALJ seemed to believe that the school system was doing an okay job, although it set a very low bar. As I conclude, the parents did not prove that it was only trivial. Well, again, as far as the progress is concerned, yes. I believe that the ALJ at pages JA98 through 106 discussed in detail all of the progress that she found that the student made, and our brief discussed the progress in reading at page 38, in math at page 44, and writing at page 46. So there is considerable testimony below about progress. The other thing is that as a legal matter, the progress that we're looking at isn't all that relevant for purposes of our discussion, or purposes of this hearing, because the educational plan and the program being proposed for the student was vastly different than what he had been getting before. Even Mr. Ige, and this reference is from the hearing as well, commented, this is at JA365 and 366, that looking back at the progress that was made before doesn't necessarily indicate whether he'd make progress going forward, because so much more was provided to the student going forward than he had received in the past. Thank you very much. Mr. Ige. May it please the Court. I am Michael Ige on behalf of N.P. and his parents. I've had to sort of reorder what I was going to say. I want to deal with the NJUF question, obviously, at first. NJUF establishes, in the Supreme Court's own words, a markedly more demanding standard, and that's at 137, Supreme Court, at 1,000. Well, you know, the Supreme Court didn't like the use of de minimis or trivial. They said that was too low a bar. But then the Supreme Court says it needs to be reasonably calculated to make progress toward the educational goals appropriate in the circumstances. And so it really comes down to a reasonableness test in the context, individualized context of the student. Absolutely. And that, in substance, it seems to me the ALJ, in this case, made a pretty good case, although may not have been specifically focusing on a reasonableness test. The Andrew test is not that precise. It's a pretty loosey-goosey test, but it maybe had to be a pretty loosey-goosey test because the factors that come to bear are so manifold. We're talking about all kinds of circumstances based on the student's condition, the student's ability to learn, the context, and so forth. And so I think the only thing we can conclude with a lot of certainty is the Court did not like the bar set at de minimis or trivial progress. And, Your Honor, if I may, I fully agree with everything you just said. And the Court itself said, it didn't use the term loosey-goosey, but it said the same thing, that it's very individualized. No, I heard him say gobbledygook the other day in an oral argument. Yes, I think in the oral argument they actually did that, Your Honor. But the difference, the important difference, I believe, that we're going to see, and it really does apply here, is here's the standard. To meet a substantive obligation under the IDA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances. It's the progress that's the important difference from the old rally, the way rally was being interpreted before, because that was talking about benefit. And now what the Court says over and over again in Andrew Evers, we have to see progress. And I respectfully beg to differ that the Administrative Law Judge— I would say progress, in view of the circumstances, is a very relative term. Absolutely. In other words, for one student, progress may be the smallest gains because the student was so static in his or her learning abilities, whereas another context of progress may be even moving from grade to grade. That's exactly what the Supreme Court said in 1982 in rally. Yes. Well, sure, if the student is in the mainstream in the classroom, they expect to go from grade to grade. So the question is, from that extreme, the very small progress because of the nature of the student's condition to more substantial progress still depends on the circumstances of the student, the individualized circumstances. Yes, Your Honor, and I respectfully beg to disagree with Mr. Nussbaum, and I believe with maybe even you, Your Honor, that the Administrative Law Judge in this case identified progress that this child was making. There is every indication, and once again, it's not necessarily for the Court of Appeals to look at the record to make these factual findings, but there's every indication that this child was not making progress across the board. He didn't achieve a single IEP goal for two years, not a single one. And the way the Administrative Law Judge dealt with that, she said, while it is true that a student's failure to achieve goals set out in an IEP may indicate that a program is an inappropriate one, nothing in the IDEA equates educational benefit with achievement of each and every goal set forth in the IEP. We weren't arguing, and the facts weren't that he didn't achieve each and every. He didn't achieve a single one. And so that's the hard information. The test scores dropped, as you see in the record, and that's the school system's test scores, the private test scores, everything was dropping, and this student was emotionally, as we've seen, anxious, hating school, crawling under desks, was having a horrible, horrible time. And yet the Administrative Law Judge, based upon the two things, one, the school system witnesses say, well, we saw progress. They couldn't quantify it, but we saw progress, said that there was progress. And two, as we saw, the Administrative Law Judge literally didn't believe any of the parents' witnesses, including the parents. She goes one by one, through each one, and says, I don't believe the parents because they have an interest in bringing this case. I don't believe the lab school witnesses because it is self-evident to me that they have an interest in this case. I don't believe the outside experts because they knew that the parents were dissatisfied with the public school placement. These are not good reasons for determining one way or the other. This is not ordinary fact-finding. And if I could direct the Court to its own decision, of course, in J.P. v. County School Board of Hanover County, a decision I believe that both Judges Traxler and Niemeyer sat on, and direct you to what you wrote there. In his written opinion, the hearing officer stated that he found all the witnesses credible and all the experts qualified to testify within their fields. The hearing officer also specifically found J.P.'s mother to be a very knowledgeable and credible witness. But the opinion otherwise contains no specifics about the hearing officer's view of the credibility of the witnesses. You approved the hearing officer in that case weighing credible witnesses and coming out with a decision and didn't find that to be improper in any way. In this case, this Administrative Law Judge did the exact opposite. Before she heard witnesses testify, she disbelieved them because, most incredibly, the mother herself who spoke to admissions made by Ms. Ramos, N.P.'s teacher, that he needed more service and that she was concerned and she'd gone to the administration. Ms. Ramos agreed to this. She confirmed that under oath. The Administrative Law Judge still didn't believe the mother because, as she said, the mother was committed to having her son in a private school and seeking funding, and as has been said, there's no reason to have a due process hearing if that is all that there is to credibility. So we don't believe that there is a basis there. But if the matter were remanded to the district court, we'd ask for some reasons, obviously. From the district court or from us? From you to the district court, Your Honor, we'd ask . . . The question is the district court didn't give us any reasons, did he? I must say that I would have written a longer decision myself, Your Honor, if I had been at the desk. But the fact is, I believe it's first the district court to give the reasons because the factors that the district court identified are right. They are correct, in our opinion, and I needn't go into them right now, they're in our breeze. What we wanted to do and what we briefed was the matters in the record that support those factors that do not find their way into the district court opinion. Isn't that the problem? I mean . . . It is a problem, Your Honor. Haven't we at least said you need to give some deference? You've got an AOJ who spends, what do you spend, three days? So? It was a long time, I remember. . . . testimony of witnesses and bringing them forth. And even with the parents, the parents had sent that email out saying, we plan to pull our kid out of this school. We'll pay our own way. Which questions, which could say, could have the view that, well, they didn't plan to work with this IEP plan very much. And you have this very detailed, 60-page opinion that's out there. The district court comes around, lists six factors, and you probably could dust two or     three of them off right off the top of your head because it doesn't make any sense to address what's here. But we're all clear what he did not do was, it doesn't appear, gave deference to those findings and addressed them in a meaningful way so as to give us some reason why he went differently on it. Well, Your Honor, if I may . . . Doesn't that spell re-man? Well, he did say he gave deference. I . . . and it's . . . Doesn't that spell re-man? It could, Your Honor. What I would . . . He did do it, but it's an Andrew case.    It's an Andrew case. It's an Andrew case. It's an Andrew case. It's an Andrew case. It's an Andrew case. I'm not going to go over here. I must admit. That would be a basis to re-man right there. Either one could form a basis for re-man. All I would want to point out, Your Honor, is that when, indeed, the record is, as I've characterized it, and it's right in the Administrative Law Judges' decision, that she's not believing . . . there were six witnesses for the parents and she said, I don't give each of them any credit, any real credibility, and the reasons stated are because they're bringing . . .      I'm not going to go over here. I'm not going to go over here. because they're bringing the action or they work in a private school, nothing else. There's nothing else except Your Honor, yes, she did note in the email that they lost faith pick in a private school. in the middle of that fourth grade year and wanted their kid in a private school. There's no indication that that influenced them. Why hasn't this been helpful? The district court as the reason for making this? I could think of a lot of things that would have been helpful. You make it some nice findings up here and you come up with some good rationale. Thank you. But the problem was the district court didn't do it. You know, it is a problem. This court can is in the same position as the district court, as you've observed in a number of cases. So look at that record and fill it in. But I'm not suggesting I'm not suggesting that your job. I want you to be. Yeah, because I'm standing here right now seeking to get an affirmative. Yes, I do. But I do understand the problems with that. Your Honor. OK, I don't believe there's anything else for me to say. Thank you. Thank you. Mr. Nussbaum, rebuttal. Thank you, Your Honor. I'm not sure I should be saying anything else, but I do have a couple of quick things to say. I'm interested to see what you're going to say. Well, I do have something to say. All right. First of all, with respect to this issue about what the ALJ did or didn't do insofar as the standard, I would point out on page 119 of the joint record extract, she does cite to Rowley. Of course, this is pre-Andrew F. And she does talk about Rowley. But then she says specifically, and this is what I was referring to earlier. It didn't have the page in front of me. However, the benefit conferred by an IDEA placement must be meaningful and not merely trivial or de minimis. So she did say, I mean, so that when she reached that conclusion, her conclusions were based on what she had said previously. And what she had said previously. Are you arguing that the ALJ applied this Andrew standard before Andrew came out and where this Fourth Circuit case is going totally the other way? She applied a standard that she took from. To me, like that is the standard the Supreme Court overruled. It's defining meaningful to be more than trivial or de minimis. That's the line being drawn for meaningful. Right. Well, that's what she says. The Supreme Court said that's too low a bar. Well, I'm not so sure. I mean, when she says, and I'll leave it at that. I mean, page 119 is where I would suggest that she is making that determination. I'll just say two other things, because I think I understand that we're looking at a probability of this case being remanded. But I did want to say one other thing. With respect to the credibility, Mr. Ige is. Where did the ALJ make affirmative findings of progress? What were the. Well, she says it throughout. I mean, she discussed it. Often talks in a negative. She often says it wasn't trivial. It wasn't de minimis. Right. And she acknowledges that some grades dropped here and there, but it wasn't that. What's your best portion? Starting at page 98, this is of the joint record extract, which is page 33 of her decision. She has a whole section on students' progress. And she talks about each one of the witnesses who have testified. She talks about this first teacher indicating that the student was making sufficient progress to meet goals. She talks about different. I don't want to identify by name because the case is under seal. But you can see the various teachers and educators that she cites who saw significant progress. I see one citation here, significant improvement. So if you go through. Now, I will. I cannot refute what Mr. Ige talked about as far as the IEP progress notes. That's true. The ALJ did refer to the teacher as being. The teacher's documentation as being poor and sloppy. And I don't have anything to refute that. It was very poor and very sloppy. But with respect to. But there were other indications of progress that were in the record and that are in the ALJ's decision. If I can just go to credibility for one second. Because when Mr. Ige says that the only reason that the ALJ rejected credibility was because the parents wanted the placement. And that the experts were testifying on behalf of her in wanting that placement. That's not at all what the ALJ said. And I'll cite again to pages 115 to 116. Where she goes into great detail about why she rejected the expert's testimony. With respect to one expert, she says that his conclusion. That the student would be too distracted. Was based on a review of the student's records as well as a very brief observation of the student. Observations such as the one that that expert engaged are not very meaningful when one is assessing a complex student. That's what she says. She analyzed this much more precisely than Mr. Ige gives her credit. Similarly, the other expert witness. Her recommendations were made without ever observing the student in the classroom. Neither of the experts addressed the specific accommodations contained in the IEP. And why those accommodations, many of which were included at the suggestion of one of the experts. Were insufficient to address the student's issues. That's at 115, 116. So she clearly went into those details. With respect to the parents. And I'm running out of time. I will just say this. That the credibility issue with the parents was not that they were committed to private school. Is that they weren't honest about it. They testified at the hearing that they were open to the public school and they weren't. I mean the evidence was clear that they had made a commitment. So it wasn't that they were committed to private school. Is that they weren't honest about it. Same thing with the experts. Who knew that they were committed to it but didn't acknowledge that. So in conclusion your honor. I know there was a lot of discussion about remanding this case. I do believe that under the MM case which is in the brief. That this court does have the right to simply review the ALJ's decision. And based on what's in our briefs I think you can confirm it. We would have to go beyond the ALJ's opinion. And look at the record. The testimony and determine whether it met the higher standard. Wouldn't we. Well I think that again. And I know that we have disagreement about this. I think that she applied a higher standard. And I have a disagreement about. My question was basically the statement in Andrew. Rejecting a line drawn at de minimis or trivial. Well I think. Don't you agree with that. Yes. Yes. Yes. And I think that again. I think the ALJ exceeded that line. But I know that there's. That that's not. I know that there's some dispute about that. How do we construe when the court finally gets to its final conclusion. It says I conclude that the parents did not prove that it was trivial. That progress was only trivial. Well because. De minimis. Right above that she said that educational benefit means it has to be meaningful. Not merely more than de minimis but meaningful. See I think that when she uses the words meaningful. It's not. The court rejected the 10th Circuit decision that said it only has to be merely more than. Trivial. What she said and what the Third Circuit had said previously. And some of the post-end ref Third Circuit cases also talk about this. I thought you read the sentence and said meaningful and not merely trivial. Right. Well meaningful is. It seems to me meaningful and not merely trivial. It seems to me that's. The distinction between the two is the line isn't it. Well I think that meaningful is more than trivial. And merely more than trivial. So. But that's my reading of. There's a gap between meaningful and the line drawn by trivial. Which we would call less meaningful. Well I suppose. Although she said it was meaningful. So anyway I know I'm out of time. Thank you very much. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, William B. Traxler, Jr., James A. Wynn, Jr.